UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STANLEY L. FELTON,
*now known as G'ESA KALAFI*,

                            Plaintiff,

        v.                                    Case No. 24-cv-1588-pp

ANTHONY MATUSHAK, *et al.*,

                            Defendants.

**ORDER TERMINATING MOTION FOR PRELIMINARY INJUNCTION
(DKT. NO. 4), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 6), DENYING MOTION FOR
JOINDER OF PARTIES (DKT. NO. 11), GRANTING MOTION FOR LEAVE TO
FILE AMENDED COMPLAINT (DKT. NO. 12) AND SCREENING AMENDED
COMPLAINT (DKT. NO 12-1) UNDER 28 U.S.C. §1915A**

        Plaintiff Stanley L. Felton, now known as G'esa Kalafi, who is incarcerated
at Green Bay Correctional Institution and is representing himself, filed a
complaint under 42 U.S.C. §1983, alleging that the defendants violated his
constitutional rights. This decision resolves the plaintiff's motions for a
preliminary injunction, dkt. no. 4, for leave to proceed without prepaying the filing
fee, dkt. no. 6, for joinder of parties, dkt. no. 11, and for leave to file an amended
complaint, dkt. no. 12, and screens the amended complaint, dkt. no. 12-1.

I.      **Motion for Joinder and Proposed Amended Complaint (Dkt. No. 11)**

        On January 22, 2025, the court denied the plaintiff's motion to hold the
screening order in abeyance and explained why joinder of this case with the
another case the plaintiff had pending at the time (Case No. 24-cv-1489) would
not be proper. Dkt. No. 10. The court advised the plaintiff that he could file an
amended complaint about the claims in this case and that the court would

1

screen that amended complaint. Id. at 3–4. On February 6, 2025, despite what the court had told him in the January 22, 2025 order, the plaintiff filed a motion for joinder of this case with Case No. 24-cv-1489. Dkt. No. 11. He also filed a proposed amended complaint containing allegations and claims against the defendants listed in both cases. Dkt. No. 11-1.

In its January 22, 2025 order, the court explained that joinder of the claims and parties in this case and those in Case No. 24-cv-1489 would be improper because the two complaints sued "different prison officials for unrelated conduct that occurred at different times. The complaints do not have defendants or claims in common, nor do the claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Dkt. No. 10 at 3. The plaintiff filed an amended complaint in Case No. 24-cv-1489, but the defendants he sued and his claims and supporting allegations remained the same. Case No. 24-cv-1489, Dkt. No. 7. Magistrate Judge Dries issued a report on the plaintiff's amended complaint, recommending that this court dismiss it for failure to state a claim. Id., Dkt. No. 8. On March 31, 2025, the court issued an order overruling the plaintiff's objections to Judge Dries's recommendation, adopting the recommendation and dismissing the case. Id., Dkt. No. 10. The court entered judgment in that case, which now is closed.

The court will deny the plaintiff's motion to join his claims with those in Case No. 24-cv-1489, both because joinder was not proper in the first place, as the court previously explained, and because the court has dismissed Case No. 24-cv-1489 for failure to state a claim and entered judgment in that case. The court will not screen the proposed amended complaint the plaintiff attached to his motion for joinder. Dkt. No. 11-1.

## II. Motion for Leave to File Amended Complaint and Proposed Amended Complaint (Dkt. No. 12)

On February 21, 2025, the court received the plaintiff's motion for leave to file an amended complaint, dkt. no. 12, and proposed amended complaint, dkt. no. 12-1. In this motion, the plaintiff asks the court to grant his motion and accept the attached amended complaint as the operative complaint "only if his amended complaint attached to his Rule 20 motion is denied." Id. at ¶2 (emphasis omitted). He says that his amended complaint "has added and deleted a few more facts and add [*sic*] an extra cause of action." Id. at ¶3.

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course" within twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Technically, the proposed amended complaint is the plaintiff's *second* proposed amended complaint; his first amended complaint is the one he attached to his motion for joinder. Because the court has not screened the original or first proposed amended complaint, the court will grant this motion as a matter of course and allow the plaintiff to proceed on the proposed amended complaint attached to his motion for leave to amend. Dkt. No. 12-1.

## III. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 6)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

3

On December 30, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $59.79. Dkt. No. 8. The court received that fee on January 7, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## IV.     Screening the Amended Complaint (Dkt. No. 12-1)

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The amended complaint names as defendants Green Bay Correctional Officers Anthony Matushak, John Lannoye and Tonia Rozmarynoski; Security Director/Administrative Captain Michael Schultz; Warden Chris Stevens; Wisconsin Department of Corrections (DOC) Secretary Jared Hoy; and the DOC itself. Dkt. No. 12-1 at 1–2. The plaintiff sues the defendants in their individual and official capacities. Id. at 1.

The plaintiff alleges that on August 29, 2024, he had a two-minute phone call with a friend using a tablet that the prison provided to all incarcerated persons at Green Bay. Id. at ¶9. He says that he and his friend discussed the murder of another incarcerated person at Green Bay on August 27, 2024, of which the plaintiff was unaware. Id. at ¶¶10–11. The plaintiff suggested "that it maybe [sic] racial tension in the environment and would probably be retaliation" because it was the second murder of a Black man by an incarcerated White person in two years. Id. at ¶12. He says that he is aware

from conversations with other incarcerated persons that several others in the restricted housing unit also discussed this murder during calls using their tablets. Id. at ¶¶14–16.

Later the same day, Lieutenant Matushak and Captain Schultz placed the plaintiff on temporary lock-up. Id. at ¶17. He says that this was done "in retaliation for his protected speech" about the murder. Id. The plaintiff says that Matushak told him that he was "being placed in TLU for a call [he] made earlier," even though Matushak admitted he had not yet listened to the call. Id. at ¶18. The plaintiff says Schultz approved his placement in temporary lock-up but did not follow the "procedure that needs to be followed." Id. at ¶19.

The plaintiff alleges that on September 4, 2025, Matushak told him that he would "get [him] out later this week to talk to [him]." Id. at ¶20. The plaintiff refused to speak with Matushak, even though Matushak told the plaintiff he would "regret it" if he did not "come out to talk to" Matushak. Id. On September 27, 2024, Matushak served the plaintiff a conduct report charging him with inciting a disturbance and threats and offered him sixty days in segregation as punishment. Id. at ¶¶22–23. The plaintiff declined the offer and opted for a due process hearing, even though he says they "are all sham hearings." Id. at ¶24.

On October 8, 2024, the plaintiff had his hearing in front of CO Rozmarynoski, who he says is "Matushak's good friend." Id. at ¶25. Rozmarynoski told the plaintiff that supervisors are "always most creditable [*sic*] then [*sic*] an inmate," that she would not recuse herself despite being friends with Matushak and that she "would believe whatever [Matushak] wrote" in the conduct report. Id. at ¶26. He says she denied him "exculpatory evidence" (though he does not say what that evidence was), and that she refused to listen to "the calls in their entirety." Id. He says that in her decision,

she also changed the language from his written statement "to meet a violation." Id. Rozmarynoski found the plaintiff guilty of both charges and sentenced him to the same sixty days' segregation that Matushak had offered before the hearing. Id. at ¶27.

The plaintiff appealed the disciplinary conviction to Warden Stevens. Id. at ¶28. On October 30, 2024, Stevens dismissed the plaintiff's conviction for inciting a disturbance but upheld the conviction for threats and upheld the full sixty-day sentence. Id. at ¶30. The plaintiff says that in reviewing the appeal, Stevens relied on a 2007 conduct report that the plaintiff had received at Green Bay charging him with planning an attack on Stevens and his wife. Id. at ¶30.

The plaintiff alleges that on November 4, 2024, Matushak further retaliated against him by filing a DOC 121 recommendation to have the plaintiff placed in administrative confinement or indefinite segregation based on the conduct report from September 2024 and other past conduct reports. Id. at ¶31. The plaintiff says that under DOC rules, Matushak was not permitted to issue a DOC 121 recommendation; he says only a security director or their designee could issue this recommendation, but that "Warden Stevens allowed Matushak to do it anyways." Id. at ¶32.

On November 20, 2024, the plaintiff attended a "sham AC hearing" in front of CO Lannoye on the DOC 121 recommendation. Id. at ¶33. He says that a committee of three prison officials accepted the recommendation to place the plaintiff in administrative confinement "in 30 minutes, a decision that always takes 1 to 3 days." Id. at ¶34. After the hearing, Ms. Tayson (not a defendant), who was the plaintiff's primary psychological services provider, served the plaintiff with the committee's decision at his cell front. Id. at ¶35. He alleges that she told him that she disagreed with the decision, but that "Lannoye

influenced the committee." Id. The plaintiff says that Tayson previously told him that she did not believe he "violated any rules" based on the information in Matushak's September 2024 conduct report. Id. at ¶36.

The plaintiff asserts that the defendants and the DOC continue to use "sham Due Process and Administrative Confinement (AC) hearings." Id. at ¶37. He says that he "and exactly situation [*sic*] inmates are found guilty 98% to 100% of the time on these hearing[s]." Id. at ¶38. He says that the defendants have "a practice, policy and custom" of sending incarcerated persons from general population to segregation because of "the overcrowded prison system that render these hearings a sham for population control." Id. at ¶39. He asserts that during his incarceration, he has been found guilty of dozens of major and minor conduct reports and had only two dismissed. Id. at ¶40. He says that he has had "countless AC hearings" and been placed in administrative confinement "100% of the time." Id. at ¶41. The plaintiff asserts that when deciding the plaintiff's hearings and appeals, Stevens continues to use the 2007 conduct report to deny the plaintiff "progress or success" in Green Bay and the DOC. Id. at ¶¶43, 45.

The plaintiff claims that Matushak and Schultz retaliated against him for the conversation he had on his tablet with his non-incarcerated friend by placing him in temporary lock-up, issuing him a conduct report and recommending his placement in indefinite segregation. Id. at ¶¶47, 49–51. He says that because of Matushak and Schultz's actions, the plaintiff has not used his tablet to speak with his family and friends. Id. at ¶49. The plaintiff claims that Matushak retaliated against him for exercising his "Fifth Amendment right to remain silent" when Matushak told the plaintiff that he would "regret" not talking to Matushak on September 4, 2024. Id. at ¶¶53–54. The plaintiff also

asserts a "class of one" equal protection claim. Id. at ¶56. He says that Matushak and Schultz violated his rights under the Fourteenth Amendment when they placed him in temporary lock-up for speaking with his friend about the conditions of his confinement but did not punish any other incarcerated person for the same speech. Id. at ¶57.

The plaintiff claims that Rozmarynoski violated his rights under the Fourteenth Amendment because she was a biased hearing officer for his conduct report written by Matushak. Id. at ¶60. He says that Stevens violated these rights by continuing to use the 2007 conduct report against the plaintiff as a reason to deny his appeal and to place the plaintiff into administrative confinement "for the second time within eight months." Id. at ¶61.

Finally, the plaintiff asserts a claim against all the defendants and the DOC under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). Id. at ¶63. He reiterates that the defendants have an unlawful practice of using due process hearings as "a sham" for population control at "their overcrowded prison." Id. at ¶¶63, 65. He says that these sham hearings "are designed to find [him] and all those exactly situated guilty 98% to 100% of the time." Id. at ¶66. He says that Stevens issues memoranda "that falsely encourages inmates to follow the rules and his subordinates (Defendant's [*sic*]) falsely verbalize the same." Id. at ¶67. He asserts that the defendants know that if every incarcerated person in general population followed the rules, then there would be no place to house all incarcerated persons "when their hole time [is] up." Id. at ¶68.

The plaintiff seeks unspecified compensatory, punitive and future damages. Id. at ¶69. He seeks expungement of "retaliatorial/false [*sic*] conduct reports" and injunctive relief ordering him transferred to a different correctional

9

institution. Id. at ¶¶69, 70. He seeks additional injunctive relief ordering the defendants to cease conducting "sham Due Process and Administrative Confinement hearings . . . and lessen their general population count." Id. at ¶71.

C.    Analysis

The plaintiff asserts claims under the First, Fifth and Fourteenth Amendments and other laws. The court will address each claim separately.

1.    *First Amendment – Retaliation*

The plaintiff asserts that Matushak and Schultz retaliated against him for using his tablet to discuss prison conditions with a non-incarcerated friend by writing him the conduct report and placing him in temporary lock-up. The court addressed this claim in the plaintiff's previous lawsuit. There, the plaintiff asserted that the provider of the tablets, ICSolutions, retaliated against him for complaining about ICSolutions-provided defective earbuds by reporting his phone call about the murder at Green Bay to prison officials. Case No. 24-cv-1489, Dkt. No. 10 at 3. The plaintiff alleged, as he does in this case, "that several other incarcerated persons at Green Bay were discussing this incident during phone calls with their friends and families," but that ICSolutions forwarded only his call to prison officials. Id. The plaintiff similarly claimed that because of the incident, he had not used his tablet "to talk to his friends and family since August 29, 2024 because he fears further retaliation." Id. at 6.

In its order in that previous case, the court explained that the plaintiff's allegations showed he that "did not suffer a First Amendment deprivation." Id. at 8. As Judge Dries had pointed out in his report and recommendation in that case, "the plaintiff knew that his non-attorney calls made at Green Bay would be monitored and could be used as a basis for discipline." Id. The discipline he then "received because of what he said during one of those monitored

conversations is not an actionable deprivation for purposes of a First Amendment retaliation claim." Id. (citing Rowell v. Drost, Case No. 20-CV-110, 2024 WL 166100, at *8–*9 (W.D. Wis. Jan. 16, 2024); and United States v. Sababu, 891 F.2d 1308, 1329 (7th Cir. 1989)).

The same conclusion is true here, even though the defendants are different. The plaintiff alleges that Green Bay officials retaliated against him for the same conduct—discussing a murder at Green Bay with a non-incarcerated friend while using his tablet. That friend is not an attorney, and the plaintiff admitted knowing "that his non-attorney calls made at Green Bay would be monitored and could be used as a basis for discipline." See id. That means that the plaintiff "cannot have a reasonable expectation of privacy in those communications," and that the communications cannot form the basis of a First Amendment claim. Rowell, 2024 WL 166100, at *8. For the same reasons the court explained in Case No. 24-cv-1489, the plaintiff has not stated a retaliation claim.

### 2. *Fifth Amendment*

The plaintiff asserts that Matushak violated his Fifth Amendment right against self-incrimination when he told the plaintiff that the plaintiff would regret not speaking with Matushak on September 4, 2024. The plaintiff does not allege what harm he suffered from refusing to speak with Matushak. For example, he does not say that Matushak issued him the conduct report, offered him sixty days' segregation or otherwise punished him for not speaking with Matushak. He alleges only that someone took those actions in retaliation for the plaintiff's speaking with his friend about the August 27 murder. The plaintiff cannot state a claim under §1983 against Matushak without explaining what harm *Matushak's* alleged constitutional violation caused him.

See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting Roe v. Elyea, 631 F.3d 843, 864 (7th Cir. 2011)) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'").

Even if the plaintiff had explained what harm he suffered from Matushak's actions, he would not state a claim. The Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, prohibits the government from using a person's assertion of his right to remain silent against him in a criminal proceeding. See Baxter v. Palmigiano, 425 U.S. 308, 316 (1976) (citing Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)). A prison disciplinary proceeding is not a criminal proceeding, so an incarcerated person's silence may be used against him in a disciplinary proceeding. Id. at 318. But the plaintiff does not allege that Matushak or Rozmarynoski used his silence against him during his due process hearing, so this cannot be the basis for his Fifth Amendment claim.

Prison staff also may violate the Fifth Amendment "if they punish 'an inmate's silence in and of itself' without some other evidence of guilt." Castillo v. Johnson, 592 F. App'x 499, 501 (7th Cir. 2014) (quoting McKune v. Lile, 536 U.S. 24, 52 (2002)). But the plaintiff does not allege that Matushak punished him solely for refusing to speak to him. The plaintiff alleges that he was issued the conduct report and discipline in retaliation for what he said during the August 29 phone call. And as explained above, he does not describe any punishment that he received for not speaking with Matushak. The fact that Matushak told the plaintiff that the plaintiff would "regret" not speaking with Matushak is not a punishment. The amended complaint does not state a Fifth Amendment claim.

3.      *Fourteenth Amendment – Equal Protection*

The plaintiff next asserts that Matushak and Schultz violated his right to equal protection when they placed him in restricted housing for his call to his non-incarcerated friend but did not similarly punish any other person who discussed the same content in their calls to friends or family. The plaintiff raised this claim in his previous lawsuit against ICSolutions. Case No. 24-cv-1489, Dkt. No. 10 at 3. In that case, Judge Dries concluded "that the plaintiff had no knowledge of what other calls ICSolutions did or did not flag; he knew only whether other incarcerated persons had been *disciplined* based on their phone calls." Id. at 5. Judge Dries explained that this limited information "was insufficient to form the basis of an equal protection claim." Id. Judge Dries also concluded that the plaintiff could not assert a class-of-one equal protection claim based on the discretionary authority that Green Bay provided ICSolutions "to flag potentially problematic phone calls to be reviewed by prison officials." Id. (internal quotation omitted). He explained that doing so "would undermine the very discretion ICSolutions has been entrusted with." Id. at 5–6 (internal quotation omitted).

This court agreed with those findings. Id. at 9. The court explained that the plaintiff's allegations "that he hears things in the prison and has had conversations with other incarcerated persons that provided him personal knowledge" about their calls were implausible. Id. at 9–10. The court stated that "it is not plausible that, simply by overhearing things and having conversations in the prison, the plaintiff could have acquired personal knowledge of *every* call that ICSolutions monitored, *every* instance where ICSolutions flagged a call for prison officials and *every* decision that Green Bay officials made regarding whether to discipline an incarcerated person." Id. at 10. The court concluded

that the plaintiff's "unsupported allegations about these calls do not provide a sufficient basis for a class-of-one equal protection claim under §1983." Id. (citing Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555).

The court also agreed with Judge Dries's conclusion that the plaintiff could not bring a class-of-one equal protection claim to challenge ICSolutions' discretionary call monitoring. Id. at 10–11. The court explained "the impossible task" that ICSolutions had "of catching and reporting every potentially problematic conversation." Id. at 10. As the court concluded, the fact that ICSolutions' call monitoring was "necessarily imperfect [did] not provide the plaintiff a basis for a class-of-one claim." Id. at 10–11 (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603–04 (2008)).

Like the plaintiff's First Amendment claim, his equal protection claim fails for the same reasons the court explained in the previous order. The plaintiff realleges that he has "personal knowledge" from "hearing the conversations amongst inmates" and from "having direct and indirect conversations with them himself" that other incarcerated persons told their family or friends about the murder on August 27, 2024. Dkt. No. 12-1 at ¶15. This is the same language the plaintiff used in his amended complaint in Case No. 24-cv-1489 to support his class-of-one claim in that case. See Case No. 24-cv-1489, Dkt. No. 10 at 7 (quoting Dkt. No. 9 at ¶10). As the court previously concluded, these conclusory and unsupported allegations about conversations that other incarcerated persons were having "do not provide a sufficient basis for a class-of-one equal protection claim under §1983." Id. at 10.

The court also again finds that even if the plaintiff's suppositions are correct, and only he was punished for discussing the murder at Green Bay, he cannot bring an equal protection claim to challenge a discretionary decision on

the basis that it was discretionary. The plaintiff asserts that Matushak and Schultz placed only him in temporary lock-up based on a conversation that he had with a friend, even though several other incarcerated persons discussed the same topic with their friends or family. But prison officials are vested with broad discretion to decide which incarcerated persons to punish and for what conduct. See Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) (stating that "prison officials have broad administrative and discretionary authority over the institutions they manage" (cleaned up)). That means that the court comes to the same conclusion here that it did regarding the plaintiff's challenge to ICSolutions' discretionary authorization about flagging phone calls: The plaintiff cannot bring a class-of-one equal protection claim "to challenge 'what in its nature is a subjective, individualized decision [on the basis] that it was subjective and individualized.'" Id. at 11 (quoting Engquist, 553 U.S. at 603–04).

### 4. *Fourteenth Amendment – Due Process*

The plaintiff claims that Rozmarynoski was a biased decisionmaker at his October 8, 2024 disciplinary hearing, which violated his right to due process. The Due Process Clause of the Fourteenth Amendment protects the rights of incarcerated persons facing a disciplinary offense. Wolff v. McDonnell, 418 U.S. 539, 558 (1974). Among those is "the right to an impartial decisionmaker." Perotti v. Marberry, 355 F. App'x 39, 43 (7th Cir. 2009) (citing Wolff, 418 U.S. at 571). Federal courts presume that disciplinary hearing officers "properly discharge their duties." Higgason v. Lemmon, 6 F. App'x 433, 435 (7th Cir. 2001) (citing Bracy v. Gramley, 520 U.S. 899, 909 (1997)). This "presumption of 'honesty and integrity'" may be overcome only with a showing

of "clear evidence to the contrary." Perotti, 355 F. App'x at 43 (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).

The plaintiff alleges that Rozmarynoski is Matushak's friend, so she should not have presided over the due process hearing for the conduct report that Matushak wrote. He says that Rozmarynoski told him that she always credits prison staff over incarcerated persons, that she refused to allow the plaintiff to provide evidence in his favor and that she did not listen to the call underlying the conduct report. Although the plaintiff will need to present significant evidence to overcome the presumption that Rozmarynoski properly discharged her duties as hearing officer, his amended complaint alleges enough at this early stage to state a plausible claim against her under the due process clause.

The plaintiff alleges that Stevens violated his right to due process when Stevens relied on a 2007 conduct report to deny the plaintiff's appeal from the 2024 conduct report. But the plaintiff does not have a due process right to appeal his prison disciplinary conviction. See Wolff, 418 U.S. at 564–66; Jones v. Brown, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003); Boyd v. Anderson, 265 F. Supp. 2d 952, 961 (N.D. Ind. 2003); see also Lowe v. Stockey, 36 F. App'x 353, 360 (10th Cir. 2002) (citing Wolff, 418 U.S. at 564–66) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal."). He does not state a claim regarding his appeal from the 2024 conduct report.

The plaintiff next claims that Matushak, Stevens and Lannoye violated his right to due process rights during the November 2024 hearing that resulted in him being sent to administrative confinement. He says that Matushak should not have been able to draft the DOC 121 recommendation for the

plaintiff's placement in administrative confinement, but that Stevens allowed Matushak to do it. He says that his hearing was a sham, and that Lannoye influenced the committee panel to decide to place him in administrative confinement within thirty minutes.

As the court explained above, the plaintiff had the right to an impartial decisionmaker at his due process hearings, including his hearing on his placement in administrative confinement. Perotti, 355 F. App'x at 43. He also had a right to a fair and impartial hearing, in which the punishment had not been predetermined. See Orozco v. Butler, 766 F. App'x 365, 369 (7th Cir. 2019) (quoting Ryan v. Ill. Dep't of Children & Family Servs., 185 F.3d 751, 762 (7th Cir. 1999)) ("To satisfy due process, a hearing 'must be a real one, not a sham or a pretense.'"). The plaintiff's allegations suggest that his hearing on the DOC 121 recommendation was none of those things. He says that Stevens improperly based the plaintiff's placement into administrative confinement on a 2007 conduct report involving Stevens and his wife. He says that Lannoye presided over the hearing but pressured the committee deciding the plaintiff's fate to vote in favor of sending the plaintiff to administrative confinement, even though at least one member of the committee did not believe that the plaintiff had done anything wrong to justify the September 2024 conduct report. Although to survive a future motion for summary judgment, the plaintiff will need to substantiate these allegations with evidence, for purposes of screening his allegations are sufficient to allow him proceed against Stevens and Lannoye on a due process claim related to his November 2024 administrative confinement hearing

The plaintiff may not proceed on a due process claim against Matushak or Schultz. He says Matushak improperly submitted the DOC 121 recommendation,

which only the security director or his designee may submit. But the plaintiff does not have a constitutional right to have particular staff submit prison paperwork. His allegations might suggest that Matushak violated prison or DOC policy by submitting the DOC 121 recommendation, but he also says that Stevens authorized Matushak to file the recommendation. Even if Matushak improperly issued the recommendation, his actions would have violated only DOC or prison procedures. The plaintiff similarly alleges that Schultz did not follow proper procedure when he and Matushak moved the plaintiff into temporary lock-up on August 29, 2024. Section 1983 protects against only constitutional violations; it does not protect against violations of prison regulations or policies. See Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017). None of these allegations state a due process claim against Matushak or Schultz. Because the plaintiff has not stated any viable claim against Matushak or Schultz, the court will dismiss them from this case.

5.     *Monell* Liability

The plaintiff alleges that all the defendants, including the DOC, have participated in, and continue to participate in, a long-standing practice or policy of providing sham hearings in disciplinary proceedings as a way of controlling the number of incarcerated persons in general population at Green Bay. He says that the prison is not able to accommodate its incarcerated population, so Stevens issues false memoranda advising incarcerated persons to follow prison rules. The plaintiff asserts that Steven's "subordinates (Defendant's [*sic*])" fabricate conduct reports to send incarcerated persons to segregation and free up space in general population. Dkt. No. 12-1 at ¶67. He asserts that because of these policies or practices, staff find him guilty of

disciplinary offenses 98 to 100 percent of the time. He contends that these policies, practices or customs violate his rights and the rights of all similarly situated incarcerated persons.

The plaintiff may proceed on a claim that Stevens created and enforced a policy of holding sham hearings in violation of the plaintiff's right to due process, as the court explained above. See Orozco, 766 F. App'x at 369; see also Heard v. Tilden, 809 F.3d 974, 981 (7th Cir. 2016) (citing Hafer v. Melo, 502 U.S. 21, 27 (1991)) (prison official may be personally liable for own actions in creating or enforcing unconstitutional policy). He may *not* proceed on this claim against Stevens's "subordinates (Defendant's)" because that vague reference fails to explain any other defendant's personal involvement or connect them to the allegedly unconstitutional acts. See Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (plaintiff cannot rely on "vague references" to defendants "without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

The plaintiff says he is making this claim under Monell, which recognizes §1983 liability against a municipality or corporation when its agents violate federal law by means of an official custom, policy or practice of the municipality or corporation. See Monell, 436 U.S. at 694; Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017). But here, there is no municipality or corporation involved. The relevant entity is the DOC, for which Stevens works and which he represents. But the plaintiff may not proceed against the DOC under §1983 because it is not a "person" subject to suit under that statute. See Myers v. Ind. Dep't of Correction, 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)).

Although the plaintiff also seeks various forms of injunctive relief, the court explains below why none of those requests is valid. See infra, Section IV.C.6.

The plaintiff also may not proceed on this claim against Jared Hoy because he has alleged no facts connecting Hoy to the allegedly unconstitutional policy. The amended complaint says nothing specific about Hoy. It does not allege that Hoy was personally involved in the alleged policy or practice of conducting sham hearings or that Hoy was aware of the alleged sham hearings at Green Bay and allowed them to continue. It appears that the plaintiff seeks to hold Hoy responsible solely because he is the Secretary of the DOC. That is insufficient to establish his liability under §1983. See Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009).

The plaintiff suggests that he wants to bring this claim on behalf of himself and all similarly situated individuals at Green Bay or DOC institutions. But the plaintiff does not have standing to assert the rights of any other person. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). He may proceed on this claim based only on the alleged violations of his own rights.

6.   *Injunctive Relief*

The plaintiff seeks damages and various forms of injunctive relief. First, he asks the court to expunge any retaliatory or false conduct reports against him. The plaintiff cannot seek this relief under §1983. To seek expungement of his disciplinary convictions or conduct reports, he must file a petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)). Next, the plaintiff seeks a transfer to another

correctional institution. But the court has no authority to order the plaintiff's transfer to another institution. Prison officials retain "broad administrative and discretionary authority" over those matters. Westefer, 682 F.3d at 683.

Finally, the plaintiff asks the court to enjoin the defendants—including the DOC—from conducting all alleged sham hearings to exert population control over incarcerated persons. He also asks the court to order Green Bay to decrease the number of persons in its general population. Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm . . . and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see Westefer, 682 F.3d at 683. Like the plaintiff's request for a transfer to another institution, these requests are well outside the bounds of the limited injunctive relief available under the PLRA. Ordering the DOC to cease *all* due process hearings is not narrow relief and extends much further than necessary to correct the alleged harm to the plaintiff. The plaintiff's request for an order directing Green Bay to reduce its general population is similarly overbroad. It is also improper because "it deals with a matter lying wholly outside the issues in the suit." Prucha v. Watson, Case No. 20-cv-00199, 2021 WL 11086448, at *2 (S.D. Ind. Dec. 15, 2021) (quoting DeBeers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). The plaintiff has not asserted a claim about overcrowding at Green Bay or unconstitutional conditions of his confinement caused by overcrowding. He may not seek such drastic, wide-ranging relief that has no relation to the claims he asserts in his amended complaint.

### 7. *Official Capacity Claims*

Finally, the plaintiff sues the defendants in their individual and official capacities. Claims against officials in their official capacities represent another

way to bring a claim against the entity that they represent or for which they work. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell, 436 U.S. at 690, n.55). The court construes the plaintiff's claims against the defendants in their official capacities as if he had brought them against the Department of Corrections, the agency for which the defendants work. Id. at 165–66. Because claims against the DOC are "no different from a suit against the State itself," the court construes these claims as if the plaintiff had brought them against the State of Wisconsin. See Will, 491 U.S. at 71 (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff cannot recover damages against the defendants in their official (versus their individual) capacities. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because damages are the only available relief that the plaintiff seeks, he cannot proceed against the defendants in their official capacities.

8.    *Summary*

The plaintiff may proceed on the following claims: 1) a due process claim under the Fourteenth Amendment against Rozmarynoski in her individual capacity for acting as a biased decisionmaker at his October 8, 2024, due process hearing; 2) a due process claim under the Fourteenth Amendment against Lannoye and Stevens in their individual capacities for their roles in his November 20, 2024, administrative confinement hearing; and 3) a due process claim under the Fourteenth Amendment against Stevens in his individual capacity for creating and enforcing a policy of "sham" hearings against the plaintiff at Green Bay. The plaintiff may not proceed on any other claims or

against any other defendants. The court will dismiss defendants Schultz, Matushak, Hoy and the DOC because the amended complaint does not state claims against them. The plaintiff may proceed on his request for damages but not on his requests for injunctive relief.

## V.    Motion for Preliminary Injunction (Dkt. No. 4)

The clerk's office docketed a motion for preliminary injunction that it received from the plaintiff. Dkt. No. 4. But the document is *not* a motion for a preliminary injunction; it is a copy of the plaintiff's original complaint. Dkt. No. 1. Because the plaintiff does not request preliminary injunctive relief outside of the relief that he seeks in his amended complaint, the court will terminate this motion.

## VI.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **TERMINATES** the plaintiff's motion for a preliminary injunction. Dkt. No. 4.

The court **DENIES** the plaintiff's motion for joinder of parties. Dkt. No. 11.

The court **GRANTS** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 12. The court **DIRECTS** the clerk to separately docket the proposed amended complaint (Dkt. No. 12-1). The amended complaint is the operative complaint going forward.

The court **DISMISSES** defendants Anthony Matushak, Michael Schultz, Jared Hoy and the Wisconsin Department of Corrections.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the

amended complaint and this order to the Wisconsin Department of Justice for service on defendants John Lannoye, Tonia Rozmarynoski and Chris Stevens. Under the informal service agreement, the court **ORDERS** those defendants to respond to the amended complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$285.21** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 21st day of May, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**