UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STANLEY L. FELTON,
*now known as G'ESA KALAFI*,

                Plaintiff,

v.                                            Case No. 24-cv-1588-pp

JOHN LANNOYE, *et al.*,

                Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (DKT. NO. 15)

On May 21, 2025, the court screened the plaintiff's amended complaint under 42 U.S.C. §1983 and allowed him to proceed on Fourteenth Amendment claims against officials at Green Bay Correctional Institution. Dkt. No. 13 at 22–23. The court did not allow the plaintiff to proceed on his requests for injunctive relief seeking expungement of his conduct reports, transfer to another facility and orders directing Green Bay to decrease its incarcerated population and enjoining the defendants from conducting "sham hearings to exert population control over incarcerated persons." Id. at 20–21. The court explained that those requests were "well outside the bounds of the limited injunctive relief available under the PLRA [Prison Litigation Reform Act]" and were unrelated to the claims asserted in his amended complaint. Id. at 21.

On June 5, 2025, after the court had ordered service of the amended complaint on the defendants, the court received from the plaintiff a motion for a temporary restraining order (TRO) and a preliminary injunction. Dkt. No. 15.

1

The plaintiff says that he previously sought "Emergency Preliminary Injunction Relief" in his amended complaint. Id. at 1 (citing Dkt. No. 12 at ¶70). He says that his "civil action has not been screened yet." Id. As the court explained above, it entered the screening order on May 21, 2025. Dkt. No. 13. The plaintiff also states that Judge Dries previously denied his request for a TRO in an earlier lawsuit. Id. at 2; see Felton v. Pollard, *et al.*, Case No. 23-cv-1591, Dkt. No. 15. He asserts that this was improper under 28 U.S.C. §636(b)(1)(A), and he asks this court to "take action on its own under Rule 65(b)(1)(A)(B)." Dkt. No. 15 at 2.

The plaintiff begins the "argument" section of his motion by recapping the First, Fifth, Eighth and Fourteenth Amendment claims he made in his amended complaint. Id. at 2–3. He says that prison officials retaliated against him for discussing the conditions of his confinement with a non-incarcerated person, and he asserts that it "is highly unlikely" that the First Amendment does not protect that activity. Id. at 3. He contends that due process requires a hearing before an impartial decisionmaker, which he alleges he was not given. Id. The plaintiff reiterates the basis for his claim against Warden Christopher Stevens, who he says also violated his right to a fair and meaningful disciplinary review process. Id. at 3–4. The plaintiff asserts that an emergency injunction ordering his transfer to another prison is his only adequate remedy because no award of damages would protect him from the "imminent threats to his limited constitutional rights and his mental health." Id. at 4. He says that he will continue to suffer this irreparable harm unless he is transferred to another

2

Case 2:24-cv-01588-PP    Filed 09/26/25    Page 2 of 8    Document 23

facility. Id. at 5. He supports this contention by detailing his interactions with the defendants from January 2023 through August 2024, and the plaintiff asserts that the defendants' "continuous harmful past and future actions" show that he "has and will continue to suffer a harm if court action is not taken." Id. at 5–7. Finally, the plaintiff asserts that granting him the requested injunctive relief "will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the constitution." Id. at 7. He says that the defendants are violating his constitutional rights by routinely denying his complaints and punishing him for conduct that occurred several years ago. Id. at 8. The plaintiff concludes that the court should grant his request and order his transfer out of Green Bay and into another maximum or medium-security institution "so he would not be subject to further harm by [Green Bay's] Warden and his subordinates." Id. at 9.

The defendants oppose the plaintiff's motion. Dkt. No. 21. They state that the plaintiff "is unlikely to succeed on the merits of his claims" because he likely will not "have clear evidence showing that Defendants were not impartial in their decisions and that Warden Stevens enforced a policy of holding sham hearings." Id. at 3. They contend that the plaintiff has not supported his claim that he will suffer irreparable future harm and instead has described only past interactions with the defendants and non-defendants related to his hearings and conduct reports. Id. at 3–4. They assert that these past interactions do not show "that a transfer to administrative confinement or the restrictive housing unit will happen imminently or even at all." Id. The defendants point out that the plaintiff

3

describes the defendants' actions of placing him on administrative confinement "as 'a campaign of petty harassments,' not as a actions [*sic*] that cause harm." Id. at 4 (quoting Dkt. No. 15 at 8). They contend that the plaintiff's request for his transfer to a different correctional facility is improper because it "would directly impact the ability of the Department of Corrections to manage the placement and security of the persons incarcerated within the Wisconsin prison system." Id. They state that the public interest "in the safe and orderly operation of [the] prison system" outweighs the plaintiff's stated interest in being transferred to another prison. Id. at 5. The defendants conclude by asserting that the plaintiff's requested relief "extends further than necessary to correct the alleged violation of [his] due process rights" and is "'well outside the bounds of the limited injunctive relief available under the PLRA.'" Id. (quoting Dkt. No. 13 at 21).

To obtain preliminary injunctive relief, whether through a temporary restraining order or a preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, then the court must balance the harm to each party and to the public interest from granting or denying the injunction.

4

See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). The balancing analysis "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The court will deny the plaintiff's motion. First, the plaintiff is incorrect that there is a requirement that a district judge be the one to deny his motion for a temporary restraining order in Case No. 23-cv-1591. Judge Dries explained that he had authority to rule on the plaintiff's motion for a TRO "in light of [the plaintiff's] consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding." Case No. 23-cv-1591, Dkt. No. 15 at 2. All parties in Case No. 23-cv-1591 since have consented to the full authority of a magistrate judge, so Judge Dries retains the authority to rule on all matters and to enter judgment in that case. See 28 U.S.C. §636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ."). The plaintiff has

no basis to complain about decisions made in his other case by Judge Dries, to whose decisional authority he consented.

Second, the plaintiff insists that he was retaliated against for activity that is protected under the First Amendment, but the court did not allow the plaintiff to proceed on a First Amendment claim. Dkt. No. 13 at 10–11. The court *did* allow the plaintiff to proceed on his Fourteenth Amendment claims related to his due process and administrative confinement hearings. Id. at 15–17. But the fact that the court allowed the plaintiff to proceed on these claims does not mean he is likely to *succeed* on the merits of those claims. The plaintiff must show more than "a mere possibility of success" to demonstrate his entitlement to a preliminary injunction. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020). He has offered nothing to satisfy that standard, which alone is reason to deny his motion for a preliminary injunction. See Cassell v. Snyders, 990 F.3d 539, 544–45 (7th Cir. 2021) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008), abrogated in part on other grounds by Pritzker, 973 F.3d at 762–63).

But primarily, the court will deny the plaintiff's motion because this court (and Judge Dries in Case No. 23-cv-1591) already has denied his request for injunctive relief ordering his transfer to another correctional facility. The court explained in the May 21, 2025 screening order that it "has no authority to order the plaintiff's transfer to another institution. Prison officials retain 'broad administrative and discretionary authority' over those matters." Dkt. No. 13 at 20–21 (quoting Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012)). The court

6

Case 2:24-cv-01588-PP    Filed 09/26/25    Page 6 of 8    Document 23

further explained that "Under the PLRA, preliminary injunctive relief 'must be narrowly drawn, extend no further than necessary to correct the harm . . . and be the least intrusive means necessary to correct that harm.'" Id. at 21 (quoting 18 U.S.C. §3626(a)(2), and citing Westefer, 682 F.3d at 683). The court determined that the plaintiff's request for a transfer to another institution was "well outside the bounds of the limited injunctive relief available under the PLRA." Id. Nothing in the plaintiff's renewed request for a TRO or preliminary injunction changes the court's conclusions. Because the relief he requests is outside the court's authority and unavailable under the PLRA, the court will deny the plaintiff's motion for a TRO or preliminary injunctive relief.

One additional point: The plaintiff states that the balance of harms favors granting his requested relief "because it is always in the public interest for prison officials to obey the law, especially the constitution." Dkt. No. 15 at 7. This is a boilerplate statement that the court has seen several times in motions for a TRO or preliminary injunctive relief filed by incarcerated persons. See, *e.g.*, Patterson v. Whitman, Case No. 24-cv-939, 2024 WL 4692151, at *6 (E.D. Wis. Nov. 6, 2024); Durley v. Jeanpierre, Case No. 21-cv-1263, 2022 WL 1720091, at *7 (E.D. Wis. May 27, 2022). It may be true that it is always in the public interest for prison officials to obey the law and the Constitution, but it adds little to the court's analysis. It is not relevant whether the public will benefit from having prison officials who obey the Constitution when the plaintiff has failed to demonstrate how he will show that the officials disobeyed it.

The court **DENIES** the plaintiff's motion for a TRO and a preliminary injunction. Dkt. No. 15.

Dated in Milwaukee, Wisconsin this 26th day of September, 2025.

            **BY THE COURT:**

            _____
            **HON. PAMELA PEPPER**
            **Chief United States District Judge**